**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

          Plaintiff,                  HON. MARK A. GOLDSMITH

v.                                CASE No. 25-CR-20451

PRITI BHARDWAJ, M.D.,

          Defendant.

**MOTION FOR MODIFICATION OF BOND CONDITION**

Priti Bhardwaj, M.D. ("Dr. Bhardwaj"), by and through undersigned counsel, respectfully moves this Court to modify the bond condition imposed at her initial appearance, which currently prohibits her from billing, or causing to be billed, any Medicare or Medicaid claim aside from her own personal healthcare needs. Specifically, Dr. Bhardwaj requests that the Court (1) permit her to resume billing Medicare and Medicaid for services rendered going forward; (2) authorize her to submit claims for services lawfully rendered and withheld during the pendency of the current condition; (3) allow her to prescribe medications to Medicare and Medicaid beneficiaries; or, in the alternative, (4) impose a narrower condition prohibiting her only from certifying patients for home health services or billing for

such certifications. This motion is supported by the accompanying memorandum of law, which is incorporated herein by reference.

Pursuant to E.D. Mich. LR 7.1(a), the undersigned counsel certifies that counsel communicated in writing with the government, explained the nature of the relief sought, and sought concurrence in such relief; the government thereafter expressly denied concurrence.

Respectfully Submitted,
CHAPMAN LAW GROUP

Dated: July 9, 2025

s/ *Laith Quasem*
Ronald W. Chapman II, LL.M. (P73179)
Laith Quasem (P87826)
1441 W. Long Lake Rd., Ste. 310
Troy, MI  48098
T: (248) 644-6326
F: (248) 644-6324
rwchapman@chapmanlawgroup.com
lquasem@chapmanlawgroup.com

*Attorneys for Defendant Bhardwaj*

2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

UNITED STATES OF AMERICA,

      Plaintiff,                HON. MARK A. GOLDSMITH

v.                             CASE No. 25-CR-20451

PRITI BHARDWAJ, M.D.,

      Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR MODIFICATION OF BOND CONDITION

---

Priti Bhardwaj, M.D. ("Dr. Bhardwaj") respectfully submits this memorandum of law in support of her motion to modify the bond condition entered at her initial appearance, which currently prohibits her from billing, or causing to be billed, any Medicare or Medicaid claims aside from her own personal healthcare needs. As explained below, the condition is overbroad, untethered to the specific conduct alleged in the Indictment, and imposes a severe and unnecessary burden on both Dr. Bhardwaj and her patients. A narrower condition, if any, would be more appropriate and consistent with the Bail Reform Act's mandate that pretrial release conditions be the least restrictive means necessary to ensure the government's stated interests.

## I.  FACTUAL BACKGROUND

Dr. Bhardwaj is a board-certified internist who has been practicing medicine since 2000, with a longstanding focus on geriatric care. Her clinical expertise includes the management of complex chronic conditions such as diabetes, hypertension, congestive heart failure, and chronic obstructive pulmonary disease (COPD). She is widely regarded for her extraordinary accessibility, frequently making herself available 24/7 to patients for urgent concerns and medication refills.

Dr. Bhardwaj operates three outpatient clinics in Lincoln Park, Taylor, and Saint Clair Shores, Michigan, where she provides primary care services to a large and medically underserved patient population. On average, she sees between 28 and 30 patients per day, approximately 94% of whom are Medicare or Medicaid beneficiaries. Nearly all require prescriptions as part of their ongoing care. In addition to her clinic-based practice, Dr. Bhardwaj serves as the Medical Director of Fraser Villa, a skilled nursing facility housing 98 senior residents, and provides regular care to patients in assisted living facilities, group homes, and private residences throughout the community.

Her commitment to patient care extends well beyond the clinical setting. Dr. Bhardwaj shares her personal phone and email with patients and their families to ensure constant accessibility. Her reputation in the community and among her

professional peers is exemplary. She also plays an active role in medical education: serving as a preceptor for Wayne State University medical students, mentoring nurse practitioner and medical assistant trainees, and giving educational presentations to seniors on critical topics such as dementia, fall risk, and medication adherence.

Dr. Bhardwaj currently maintains a panel of approximately 2,800 active patients. She is the primary care provider for many extended families and serves as a vital point of access to healthcare for a highly vulnerable population. Her practice also employs 20 individuals whose livelihoods depend on the continued operation of the clinics.

All of this came to a sudden and devastating halt on June 17, 2025, when Dr. Bhardwaj was indicted on one count of conspiracy to commit health care fraud in violation of  18 U.S.C. § 1349 (Count 1), and three counts of health care fraud in violation of  18 U.S.C. §§ 1347 and 2 (Counts 2-4). (ECF No. 1). Count 1 alleges that Dr. Bhardwaj "devised and participated in a scheme in which Walid Jamil, Carol Kassab, and their co-conspirators provided Medicare beneficiaries to [Dr. Bhardwaj] to be certified for home health care," and that "[i]n exchange for providing [Dr. Bhardwaj] with access to valuable Medicare beneficiaries…[Dr. Bhardwaj] agreed with Walid Jamil, Carol Kassab, and others to refer these recruited Medicare beneficiaries back to Walid Jamil, Carol Kassab, and their co-conspirators for home health services purportedly provided by the Jamil [home health agencies] HHAs."

5

(*Id*. at 10, ¶¶ 28-29). In sum, the Indictment accuses Dr. Bhardwaj of "agree[ing] with Walid Jamil, Carol Kassab, and others to falsify, fabricate, alter, and cause the falsification, fabrication, and alteration of medical records, including but not limited to, home health certifications, plans of care, and physician notes to support claims submitted by the Jamil HHAs to Medicare for home health care services, and other services, that were medically unnecessary or were not provided as represented." (*Id*. at 10, ¶ 30).

Counts 2 through 4 incorporate these allegations and further allege that Dr. Bhardwaj knowingly and willfully executed a scheme to defraud Medicare. (*Id*. at 12). In support, the Indictment cites three instances in which Dr. Bhardwaj allegedly submitted Medicare claims totaling $2,200.01, $1250.01, and $542.00 for patient "A.A." on April 21, May 10, and August 17 of 2022, respectively. (*Id*. at 14). The first two visits are described as involving "home health services," whereas the third visit relates to telehealth services, including an annual wellness exam, alcohol misuse screening, and smoking and tobacco use intensive counseling. (*Id*.).

At Dr. Bhardwaj's initial appearance on June 27, 2025, defense counsel objected to Magistrate Judge Anthony P. Patti's adoption of the Pretrial Services Report's recommendation that Dr. Bhardwaj "[m]ay not bill or cause to be billed, any Medicare or Medicaid claims aside from one's own personal healthcare needs." (*See* ECF No. 8). Counsel argued that such a restriction was not the least restrictive

6

means of ensuring Dr. Bhardwaj's appearance or protecting the integrity of the Medicare program, and that the condition would impose an undue and punitive burden—not only on Dr. Bhardwaj, but also on the patients who rely on her care. (*Id.*). Magistrate Judge Patti nevertheless adopted the recommendation and entered an order prohibiting Dr. Bhardwaj from billing, or causing to be billed, any Medicare or Medicaid claims, except for her own personal healthcare needs. (ECF No. 11, at 4).

On July 2, 2025, after consulting with the government to clarify its interpretation of the bond condition—and to ensure that Dr. Bhardwaj could preserve her practice without inadvertently violating the order—defense counsel advised Dr. Bhardwaj of the following: (1) she may continue to treat patients, including Medicare and Medicaid beneficiaries; (2) she must withhold the submission of any Medicare or Medicaid claims during this period; and (3) she must refrain from writing prescriptions for Medicare or Medicaid beneficiaries, as such prescriptions may result in claim submissions by third-party pharmacies, which the government may construe as "causing" a claim to be billed in violation of the condition.

This restriction has had a crippling effect on Dr. Bhardwaj's medical practice, her financial wellbeing, and that of her family and medical staff, all of which will only worsen with time. Because a substantial portion of her patient population consists of Medicare and Medicaid beneficiaries, the inability to prescribe or bill for

7

their care effectively prevents her from fulfilling her clinical responsibilities, maintaining her patients' continuity of care, or sustaining her livelihood.

## II.    LEGAL STANDARD

Under 18 U.S.C. § 3145(a)(2), a defendant who has been released by a magistrate judge may move the district court to amend the conditions of release. The district court reviews the magistrate judge's pretrial order *de novo*. *See United States v. Marcrum*, 953 F. Supp. 2d 877, 880 (W.D. Tenn. 2013) (citing *United States v. Romans*, No. 00-5456, 2000 U.S. App. LEXIS 10708, 2000 WL 658042, at *1 (6th Cir. May 9, 2000)).

The Bail Reform Act provides that pretrial release must be made "subject to the least restrictive further condition, or combination of conditions, that…will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). This standard reflects a strong preference for release under reasonable conditions rather than unnecessarily burdensome restrictions.

Importantly, "[n]othing in [18 U.S.C. § 3142] shall be construed as modifying or limiting the presumption of innocence." *United States v. Johnson*, No. 07-CR-30292, 2007 U.S. Dist. LEXIS 42718, at *6 (E.D. Mich. June 13, 2007) (quoting 18 U.S.C. § 3142(j)). Until a defendant pleads guilty or is found guilty beyond a reasonable doubt, it remains the government's "ultimate burden" to show that "no

conditions of release can assure that the defendant will appear and to assure the safety of the community." *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010).

## III.   ARGUMENT

Dr. Bhardwaj does not dispute that "[t]he billing restriction imposed here is routinely sought by the Government and applied in this District where the defendant is charged with engaging in a '***significant volume*** of health care fraud.'" *United States v. Judd*, No. 21-20600, 2021 U.S. Dist. LEXIS 222516, at *2 (E.D. Mich. Nov. 18, 2021) (citing *United States v. Mok*, No. 20-mj-30163, 2020 U.S. Dist. LEXIS 88577, 2020 WL 2528671, at *2 (E.D. Mich. May 18, 2020)). *See also United States v. May*, 568 F.3d 597, 608 (6th Cir. 2009). "The intent is to prevent the defendant from exposing the community to undue economic harm." *Id*.

But Dr. Bhardwaj has not been charged with engaging in a significant volume of health care billing fraud. Leaving aside the fact that no allegations have yet been substantiated, the Indictment merely alleges that, over the course of five years and three months—from January 1, 2020, through March 31, 2025—Dr. Bhardwaj "submitted and caused the submission of false and fraudulent claims…in an amount approximately in excess of $1 million" of which she personally "was paid approximately $249,000 by Medicare," (*see* ECF No. 1 at 11-12, ¶ 34). Moreover, the Indictment alleges that the Jamil HHAs submitted over $790,000 in claims based

on Dr. Bhardwaj's home health certifications, and were paid nearly $700,000 on those claims. (*Id.*, ¶ 32).

Taking the Indictment at face value, Dr. Bhardwaj is not alleged to have submitted the vast majority of the claims at issue. Instead, she is accused of indirectly causing the submission of those claims, specifically through certifying patients as homebound, which the Jamil HHAs then used to bill Medicare. While the Indictment does allege that Dr. Bhardwaj herself submitted claims "for home visits, telehealth visits, and other services that were medical unnecessary, ineligible for Medicare reimbursement, and not provided as represented" (ECF No. 1 a 11, ¶ 34), those allegations are limited in scope and volume. The government does not allege any systemic billing-code manipulation, broad-based false billing, or any conduct suggestive of pervasive fraud. Rather, the government's theory centers on a narrow referral and certification relationship with the Jamil HHAs, and does not claim even remotely that any alleged fraud extended to the entirety of Dr. Bhardwaj's practice.

Thus, Dr. Bhardwaj is not alleged to have exploited her billing privileges in any systemic or expansive way. The government's theory is not that Dr. Bhardwaj engaged in direct, ongoing, or high-volume Medicare fraud. It is that she improperly certified certain patients as homebound. Such conduct, even if proven, falls far short of justifying a blanket ban on all Medicare and Medicaid billing or prescribing activity.

10

Yet, the government maintains that the bond condition imposed is the least restrictive means of protecting the integrity of the Medicare program. But the alleged fraud here, at best, involves a discrete referral and certification arrangement with specific third-party home health agencies. The charges are narrowly tied to Dr. Bhardwaj's alleged involvement with the Jamil HHAs and bear no connection to the broader, legitimate functioning of her medical practice. There is no allegation, let alone evidence, that her general billing practices, routine clinical services, or patient care outside of that relationship were improper or fraudulent.

A bond condition as severe as the one imposed here should reflect the nature, scope, and risk of the alleged misconduct. Imposing a blanket prohibition on all Medicare and Medicaid billing and prescribing activity not only lacks a factual basis, but it also vastly overbroad and untethered to the government's articulated concerns. In practice, such a prohibition serves to punish both Dr. Bhardwaj and the vulnerable patients who depend on her for care. This Court may, and should, modify the condition in a less restrictive manner to align with the limited nature of the allegations in the Indictment.

In *United States v. Kumar*, a pending and unpublished case in this Circuit (W.D. Tenn.), an identical bond condition prohibiting the defendant from billing or causing to be billed Medicare and Medicaid was imposed where the defendant was charged far more seriously—not only with health care fraud, but also with

misbranding and adulterating medical devices, among other serious federal offenses. There, defense counsel moved to modify the condition on the ground that the weight of the evidence was not strong and that the court could adopt less restrictive alternatives, such as prohibiting the defendant from performing physical exams unless authorized by the court. (*See* Exhibit A, *Kumar* Motion for Modification of Bond Conditions and Incorporated Memorandum in Support). The motion was granted. The bond condition,  which initially required that the defendant "[r]etain records and no billing from the date of arrest," (Exhibit B, Order Setting Conditions of Release), was modified to permit billing moving forward—reading instead, "retain records and no billing from date of arrest through the entry of this order." (*See* Exhibit C, Order Granting Motion for Modification of Bond Conditions).

Here, the justification for the original restriction is even weaker. Unlike in *Kumar*, where the government alleged broad-ranging misconduct and risk to the public health, the allegations against Dr. Bhardwaj are narrowly focused and tied to conduct involving entities that were affiliated with individuals who are presumably now cooperating with the government. Moreover, Dr. Bhardwaj merely seeks permission to resume providing care to her patients, including prescribing their necessary medications, and to sustain her practice by submitting claims lawfully rendered. Accordingly, this Court should not only permit Dr. Bhardwaj to resume billing Medicare and Medicaid going forward, but also expressly authorize her to

submit claims for services rendered during the period in which she withheld billing in compliance with the Court's existing order.

## IV.    CONCLUSION

For the foregoing reasons, Dr. Bhardwaj respectfully requests that this Court modify the existing bond condition to:

1.    permit her to resume billing Medicare and Medicaid for services rendered going forward;

2.    allow her to submit claims that were lawfully withheld during the pendency of the current condition; and

3.    authorize her to prescribe medications to Medicare and Medicaid beneficiaries in the ordinary course of patient care.

There are less restrictive conditions that the Court may impose to protect the integrity of the Medicare program, such as prohibiting Dr. Bhardwaj from certifying patients for home health services requiring a determination of homebound status or from billing for such certifications. These narrower conditions would more directly address the specific conduct alleged in the Indictment without unjustly impeding Dr. Bhardwaj's ability to practice medicine, maintain her livelihood, and provide continuity of care to a medically underserved population.

Respectfully Submitted,
CHAPMAN LAW GROUP

Dated: July 9, 2025

s/ *Laith Quasem*
Ronald W. Chapman II, LL.M. (P73179)
Laith Quasem (P87826)
1441 W. Long Lake Rd., Ste. 310
Troy, MI  48098
T: (248) 644-6326
F: (248) 644-6324
rwchapman@chapmanlawgroup.com
lquasem@chapmanlawgroup.com

*Attorneys for Defendant Bhardwaj*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was electronically filed on July 9, 2025.

Notice of this filing was sent by operation of the Court's electronic filing system to

all parties indicated on the electronic filing receipt.

<u>*s/ Laith Quasem*</u>
Laith Quasem
