# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                    Cr. No. 2:25cr20032-JTF

SANJEEV KUMAR,

      Defendant.

## MOTION FOR MODIFICATION OF BOND CONDITIONS AND INCORPORATED MEMORANDUM IN SUPPORT

Dr. Sanjeev Kumar, by and through undersigned counsel, respectfully submits this *Motion for Modification of Bond Conditions and Incorporated Memorandum in Support*. During Dr. Kumar's detention hearing, this Court questioned whether Dr. Kumar could close his clinic, Poplar Avenue Clinic, and continue to fulfil his obligations to patients to provide them with their medical records, given that this Court also imposed a bar on contact with witnesses and victims. Dr. Kumar agreed to close his medical practice but indicated that he may request the Court's reconsideration. Considering the obligations Dr. Kumar owes his patients, the strong need of the community for his specialized surgical services, the evidence in the case, and the Government's misplaced allegations and outrageous statements to the media, Dr. Kumar respectfully requests this Court reconsider his conditions of bond. Specifically, Dr. Kumar requests that he be permitted to reopen the Poplar Avenue Clinic and to practice medicine with conditions as deemed necessary by the Court.

## FACTUAL BACKGROUND

Dr. Kumar is one of only 300 specialists nationwide in gynecologic oncology and high risk robotic pelvic surgery. His clinical expertise covers critical conditions such as cervical cancer, endometrial cancer, ovarian cancer, pelvic masses and tumors, and vulvar and vaginal cancers. A highly regarded Mayo Clinic-trained surgeon, Dr. Kumar has co-authored over 40 peer-reviewed publications and received numerous awards. (*See* Motion for Release, ECF No. 12, Exhibit A.)

Dr. Kumar's specialty is rare. The Poplar Avenue Clinic is the only clinic providing these specialized services within an approximately 200-mile radius of Memphis that can treat women dealing with these critical conditions in high-risk situations. The nearest specialty surgeons are in Nashville, Chicago, or Dallas. On the day of his arrest, Dr. Kumar had eight scheduled surgeries which had to be cancelled. Further, Dr. Kumar routinely performs 10-15 surgeries per week, and approximately 50% of those cases each week either have cancer or precancerous conditions that could progress and kill a patient due to lack of timely surgery. Additionally, Dr. Kumar operates a busy practice focused on patients who are high-risk for developing cancer due to factors such as obesity. At his clinic, Dr. Kumar and other qualified staff see approximately 50 patients per day, 6 days a week. They have already been forced to turn hundreds of patients away, including those at risk of developing cancer.

Dr. Kumar's patients are suffering because they cannot afford critical treatment or to travel long distances to receive such treatment. Notably, there are no allegations in the Indictment related to Dr. Kumar's surgical procedures. The Government has also indicated to undersigned counsel that patients are calling the Government daily asking how to receive medical care and their medical records now that Dr. Kumar is restricted from practicing medicine.

At Dr. Kumar's initial appearance and detention hearing, the Government maintained that Dr. Kumar was a threat to public safety. The only charge in the Indictment that could potentially support this claim is violation of 18 U.S.C. § 2422(a), which prohibits coercing and enticing an individual to cross state lines to engage "in prostitution, or in any sexual activity for which any person can be charged with a criminal offense". The Government categorized Dr. Kumar's alleged actions as crimes of violence. But Dr. Kumar has been charged with 18 U.S.C. § 2422(a) on an unsturdy charging theory that equates the misbranding or adulteration of medical devices and health care fraud to sexual abuse. The Government has not rebutted this otherwise.

Putting those charges aside, the Indictment boils down to two alleged issues: adulterating or misbranding hysteroscopes, and unnecessary hysteroscopies. As for the first category of allegations, the Tennessee Department of Health ("TDOH") launched a state investigation after

the Government provided it with evidence seized during a search warrant executed at the Poplar Avenue Clinic last April. TDOH found insufficient evidence to support any allegations that Dr. Kumar was adulterating or misbranding hysteroscopes. As for the Government's allegations that some hysteroscopies Dr. Kumar performed were medically unnecessary, the proof of such claims requires expert medical opinions, which the Government fails to disclose. Crucially, the Indictment itself contains no allegations of sexual assault or of instances of patient harm. Instead, the Indictment in large part amounts to a disagreement between Dr. Kumar's clinical decision-making and what Medicare and Medicaid agree to reimburse. Dr. Kumar is confident of proving medical necessity in each case, agreed to by the patients themselves.

## STANDARD

The Court "may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). Conditions of release must be tailored such that they are the least restrictive means of ensuring the Defendant's appearance and the safety of the community. *Id.* Until the Defendant is found or pleads guilty, it is the Government's "ultimate burden" to show "no conditions of release can assure that the defendant will appear and to assure the safety of the community." *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010).

When determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, the Court must consider "the nature and circumstances of the charged offense, the weight of the evidence against Defendant, Defendant's history and characteristics, and the nature and seriousness of the danger Defendant's release would pose to any person or the community." *United States v. D-1, Dr. Bothra*, 2019 U.S. Dist. LEXIS 231749, *2–3 (E.D. Mich. Jan. 16, 2019) (citing 18 U.S.C. § 3142(g)). But "[n]othing in [18. U.S.C. § 3142] shall be construed as modifying or limiting the presumption of innocence." *United States v. Johnson*, 2007 U.S. Dist. LEXIS 42718, *6 (E.D. Mich. June 13, 2007) (citing 18 U.S.C. § 3142).

A condition of release may include limiting a physician's ability to practice medicine if the Court believes such a condition is required to protect the safety of the community. These

3

circumstances are case specific and rely on careful consideration of the facts. *See United States v. D-6 Tariq Omar*, Case No. 17-cr-20465-DPH, ECF No. 478 (E.D. Mich. April 7, 2020) (unreported and attached hereto as **Exhibit A**) (permitting physician to volunteer his time as a pulmonologist to assist with the COVID-19 pandemic); *United States v. Johnson*, 2007 U.S. Dist. LEXIS 42718 (E.D. Mich. June 13, 2007) (releasing on bond, over presumption of detention, physician charged with possession and distribution of child pornography and permitting physician to continue practicing medicine so long as he had no contact with minors unless in the presence of another medical professional).

## ARGUMENT

Dr. Kumar's conditions of release currently in place stem from the Government's unsubstantiated theory of protecting the public from alleged sexual abuse. The Government misrepresented the allegations in this case accusing Dr. Kumar of "sexual abuse" and labeling him a "predator in a white coat." (*See* **Exhibit B**, USAO Press Release, dated February 28, 2025. The Government has subsequently withdrawn at the request of Dr. Kumar the allegation that he is a "predator in a white coat.") Those allegations limited Dr. Kumar's Constitutionally guaranteed presumption of innocence. Dr. Kumar is a respected member of the community, an award-winning physician, and an individual with no past criminal history. There are conditions that can still reasonably assure public safety that are less restrictive than the currently imposed conditions requiring Dr. Kumar to shut down his medical clinic and not practice medicine, which subjects hundreds of high-risk patients to scrambling to find medical coverage and forcing them to travel long distances.

### I. The public need for Dr. Kumar's services outweighs any alleged and unsubstantiated concerns of patient harm.

Despite the public need for Dr. Kumar's specialty surgical services, the Government maintains that Dr. Kumar's clinic should be shut. The specific procedure in question, a

hysteroscopy, is a minimally invasive procedure commonly performed for numerous medically justified reasons, including fertility issues, abnormal pap smears, uterine bleeding, endometriosis, miscarriages, removal of scar tissue, fibroids, polyps, and biopsies. Dr. Kumar's treatments were consistently supported by appropriate medical diagnostics and referrals from respected primary care physicians nationwide. The public need for Dr. Kumar's specialty surgical services outweighs, therefore, any alleged and unsubstantiated concerns of patient harm, for which none are outlined in the Indictment. A hysteroscopy is critical in diagnosing uterine cancer. If it is not performed, patients can suffer or potentially die because of a missed diagnosis of uterine cancer.

To reiterate, Dr. Kumar's specialty is such that his clinic is the only one within approximately a 200-mile radius of Memphis that can treat women in high-risk situations requiring the services of a gynecologic oncologist. The nearest specialty surgeons are in Nashville, Chicago, or Dallas. For those patients who are on Medicare and Medicaid the distance of receiving like treatment is probably out of reach. On the day of his arrest, Dr. Kumar had eight scheduled surgeries which had to be cancelled. Overall, Dr. Kumar has 10-15 surgeries scheduled per week, and 50% of those patients on average present with cancerous or precancerous conditions. Dr. Kumar's patients are suffering because they cannot afford critical treatment or to travel long distances to receive such treatment. Further, patients have been calling the Government daily asking how to receive medical care and their records.

It is not just his surgical patients who are suffering. At his clinic, Dr. Kumar and other qualified staff see approximately 50 patients per day, 6 days a week. The clinic has already been forced to turn hundreds of patients away. These are patients who are at a high risk of developing cancer if not properly monitored and treated. These patients have nowhere left to go.

## II.     There are less restrictive conditions that will assure public safety.

TDOH investigated and found insufficient evidence to support the same adulteration and misbranding charges the Government now alleges against Dr. Kumar. If TDOH is satisfied with Dr. Kumar's practice of medicine, Dr. Kumar's right to practice medicine should not be revoked based on a billing disagreement. Dr. Kumar respectfully requests this Court allow him to reopen the clinic and permit him to practice medicine in accordance with TDOH's findings.

If the Court is not inclined to do so at this stage, there are several less restrictive conditions that Dr. Kumar requests the Court consider. For example, Dr. Omar was permitted to volunteer his time as a pulmonologist. *Omar*, Case No. 17-cr-20465-DPH. And Dr. Johnson, though charged with possession of child pornography, was still permitted to practice medicine and perform surgical procedures while charges were pending so long as he was not alone with minors. *Johnson*, 2007 U.S. Distr. LEXIS 42718. In each case, the Court narrowly tailored the conditions of release permitting physicians to practice medicine (even those facing a presumption of detention).

Here, Dr. Kumar is presumed innocent. He has not pleaded guilty. He has not been convicted by a jury. He is a highly-respected physician who has won multiple awards for his work. If, and until, the Government can prove the allegations in the Indictment, Dr. Kumar should be permitted to practice medicine. If the Court has specific concerns about the allegations, such concerns can be addressed by narrowly tailored restrictions, such as prohibiting Dr. Kumar from using single-use scopes and treating minors and appointing an individual to monitor his cleaning logs and documentation of informed consent.  Dr. Kumar further requests that Poplar Avenue Clinic be permitted to reopen and operate. There are many other qualified practitioners in addition to Dr. Kumar who wish to continue practicing medicine and taking care of their patients.

### III.    The weight of evidence (though the least important factor) supports allowing Dr. Kumar to practice medicine.

The Government's charging theory—that misbranding or adulterating devices or committing health care fraud amounts to sexual abuse—is novel. Most of the allegations in the indictment are unsupported by factual allegations.  The adulterating and misbranding allegations lack dates or specific instances of such alleged conduct.  Those allegations were recently investigated by TDOH who found insufficient evidence to support any allegations that Dr. Kumar was adulterating or misbranding hysteroscopes. Moreover, Dr. Kumar presently uses multi-use scopes which are cleaned and sanitized with the most updated medical equipment and procedures. (*See* **Exhibit C**, Photograph of Sanitizing Equipment and Hysteroscopes.)

As for the health care fraud charges, the Indictment does not cite any expert medical testimony backing the claims that such minimally invasive procedures in a high-risk population are unnecessary. Dr. Kumar maintains each and every procedure was medically necessary for the health and well-being of the patient. He had no knowledge or intent to defraud. Additionally, Medicaid placed Dr. Kumar on a pre-payment review in the past in which Medicaid specifically reviewed claims related to hysteroscopy procedures prior to paying Dr. Kumar for such services. Put simply, Medicaid reviewed and approved claims submitted by Dr. Kumar for hysteroscopies. Therefore, the claims were not material to Medicaid's decision to pay, as they had an option to continue a pre-payment review or deny payment and chose not to do so.

Crucially, the indictment itself contains no allegations of sexual assault or of instances of patient harm, which directly contradicts the Government's position that Dr. Kumar engaged in a crime of violence.  Rather, it charges Dr. Kumar on a new and unsupported theory that the adulteration or misbranding of devices or health care fraud can amount to sexual abuse. In reality, the Indictment largely amounts to a payment disagreement between Dr. Kumar's clinical decision-making and what Medicare and Medicaid agree to reimburse.

In sum, the weight of the evidence is not strong and should be considered when modifying bond conditions.  Vague and unsupported theories of sexual abuse do not justify taking away Dr.

7

Kumar's right to practice medicine. The Government has already prosecuted Dr. Kumar in the public eye, treating him as a "predator" and essentially stripping him of his Constitutional rights, even though he remains innocent until proven guilty. In effect, the Government has already taken away everything from Dr. Kumar, including his livelihood, all while he remains innocent. Prohibiting Dr. Kumar from practicing medicine and operating the Poplar Avenue Clinic to treat patients is unjust and not the least restrictive means necessary by which to assure public safety when no allegations of patient harm can be supported.

## **CONCLUSION**

Dr. Kumar respectfully requests the Court grant his Motion for Modification of Bond Conditions, including that he be allowed to reopen the Poplar Avenue Clinic and practice medicine. At a minimum, Dr. Kumar requests he be allowed to continue practicing medicine and performing surgical procedures, for which the Government has made no allegations of wrongdoing, and to be permitted to reopen the clinic for other qualified staff to practice medicine.  There are other conditions which the court can impose including his not performing an exam on a minor unless authorized by the court, to require only multi-use devices be used in examinations or to require a chaperone with Dr. Kumar in his office examinations.

Respectfully submitted,


s/ Elena R. Mosby
Lawrence J. Laurenzi (TN BPR No. 9529)
Elena R. Mosby (TN BPR No. 40562)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
901-524-5000
llaurenzi@bpjlaw.com
emosby@bpjlaw.com
*Attorneys for Dr. Sanjeev Kumar*

Of Counsel:

Ronald Chapman, III (*pro hac vice application to be submitted*) (Mich. Bar No. P73179)

8

Maritsa Flaherty (*pro hac vice application to be submitted*) (Cal. Bar No. 327638)
CHAPMAN LAW GROUP
1441 W. Long Lake Rd., Suite 310
Troy, Michigan 48098
(248) 644-6323
rwchapman@chapmanlawgroup.com
mflaherty@chapmanlawgroup.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been filed using the Court's CM/ECF system this 17th day of March 2025, which will automatically send a copy of the filing to the following:

Lynn Crum, AUSA (lynn.crum@usdoj.gov)
Scott Smith, AUSA (scott.smith@usdoj.gov)
Sarah Pazar Williams, AUSA (sarah.williams2@usdoj.gov)

s/ Elena R. Mosby

## CERTIFICATE OF CONSULTATION

The undersigned hereby certifies that counsel for Dr. Kumar has consulted with counsel for the United States regarding the instant motion this 17th day of March 2025. The United States does not agree with modifying Dr. Kumar's conditions of release on bond.

s/ Elena R. Mosby

# EXHIBIT A

Case 2:25-cr-20465-DPH-DRG ECF No. 24-1, PageID.787 Filed 07/09/25 Page 11 of 25
Case 2:17-cr-20465-DPH-RSW ECF No. 473, PageID.8745 Filed 04/22/20 Page 1 of 15
138

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,               CASE NO. 17-20465
                                     HON. DENISE PAGE HOOD

v.

D-6 TARIQ OMAR,

       Defendant.

_____/

# ORDER GRANTING MOTION
# TO CLARIFY BOND CONDITIONS [#470]

## I.    Introduction

Defendant Tariq Omar recently was convicted of one count of Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. §1349, and one count of Health Care Fraud, in violation of 18 U.S.C. §§1347 and 2. His sentencing is currently scheduled for July 30, 2020, and he remains free on bond, subject to the conditions of his bond. On March 31, 2020, Defendant filed a Motion to Clarify Bond Conditions [ECF No. 470], specifically asking the Court to clarify whether or not he may volunteer to assist as a pulmonologist during the COVID-19 crisis. The Government has filed a response, and Defendant filed a reply.

## II.    Background

Since Defendant's first appearance on July 12, 2017, among Defendant's

conditions of bond are that he shall not: (a) "participate in the direct or indirect billing of any federal health care program," nor (b) write prescriptions for controlled substances. [ECF No. 39] Defendant previously filed, and the Court denied, a motion to modify conditions of bond in order to indirectly bill federal health care programs in conjunction with the treatment of pulmonary patients. [ECF Nos. 131, 164] The Court has been advised that Defendant has complied with his bond conditions throughout this matter, both prior to and since his conviction.

## III.  Analysis

Defendant argues that he is trained as an intensivist and pulmonologist and has forty years of combined training and experience. He states that: (a) the indictment in this case and the jury's verdict of guilt did not relate in any way to his work as a pulmonologist nor to any work performed in a hospital or emergency room; and (b) he has never been disciplined or accused in any manner of wrongdoing relating to pulmonology or intensive care. He states that the instant case involved only his work in a pain clinic, including prescribing opioids.

Defendant's motion is based on the COVID-19 pandemic. It is undisputed that Michigan is currently under a state of emergency due to the rapidly increasing numbers of COVID-19 patients, and emergency is especially pronounced in the Detroit metropolitan area. Defendant states that he would like to volunteer his

services as a pulmonologist to local hospitals to help the community in this time of crisis. Defendant represents that he would not bill anyone for this work on behalf of the patients, nor would he ask for any form of payment himself. He states that his "only wish is to assist in this unprecedented health emergency by using his training and experience as a pulmonologist to attempt to save lives and lessen permanent lung damage in those patients who survive." Defendant asserts that he would continue to abide by the condition of his bond that he not prescribe any controlled substance.

Defendant's counsel believes that the proposed volunteer work is permissible under the current conditions of Defendant's bond, but Government counsel believes that Defendant is barred from performing or working as a doctor in any manner. For that reason, and in order not to be accused of violating his bond, Defendant filed the instant motion for clarification.

The Government opposes Defendant's motion for several reasons. First, the Government states that Defendant's counsel offered to surrender his license as a condition of his release pending sentencing. *See* ECF No. 470, PgID 6746 ("counsel did offer to surrender Dr. Omar's license immediately and to notify [the licensing board] of the verdict that same day"); ECF No. 450, PgID 6674-75 (Trial Transcript No. 15) (Defendant's counsel stated, "under the rules of LARA he's to notify LARA of any conviction and there will be a summary suspension as a result of that.").

Second, the Government argues that Defendant has harmed patients in the past, including administering thousands of bogus back injections and participating in the prescription of opioids that fueled an epidemic that has plagued the community for years. Third, the Government argues that, if Defendant is again permitted to treat patients, he could still profit without billing claims for his services by referring COVID-19 patients to third-party providers (*e.g.*, laboratories) in exchange for kickbacks and bribes, which would be consistent with past conduct.

The Court is persuaded that Defendant's motion can be granted without the dangers to patients or Medicare/Medicaid that the Government raises, concerns that are not meritless. It is true that witnesses testified Defendant was responsible for giving patients facet joint injections that were medically unnecessary and sometimes painful. And, it is true that Defendant admitted he engaged in misconduct while working at Tri-County Physicians in 2014-16, which resulted in the Michigan Department of Licensing and Regulatory Affairs limiting his license in 2017.

The Court notes two critical things about Defendant's crimes that are or should not be relevant with respect to the modification he seeks. First, Defendant's crimes were committed while working at the pain clinics. Defendant is not asking to, and shall not be permitted to, work in a pain clinic as a result of this Order; he is asking and will be permitted to provide services at local hospitals. There is no evidence, nor

even any allegation, that Defendant wrongfully billed Medicare or engaged in misconduct in his pulmonary medicine practice or in a hospital or emergency room. Second, Defendant is asking the Court to be allowed to serve as a volunteer, without pay or compensation. As the Government emphasized at trial (and in its response), Defendant's crimes of administering and billing for medically unnecessary services was financially motivated. If he is volunteering, and the Court prohibits him for accepting compensation of any kind, that motivating factor is not present.

The Court concludes that several other factors strongly weigh in favor of permitting Defendant to volunteer as a pulmonologist in the manner proffered. Most significantly, Defendant is a pulmonologist, a specialty for which there is a critical need in combating the COVID-19 pandemic. For this reason, Defendant can be a valuable resource in assessing and treating patients suffering from COVID-19, a virus that affects the respiratory system.

The Court also finds important that Defendant will perform as a volunteer, so it seems unlikely that he himself would have the authority to prescribe controlled substances or bill Medicare/Medicaid. As Defendant has acknowledged, any such actions are prohibited by his current bond conditions, and the Court reiterates now that Defendant shall not bill any federal health care program or prescribe any controlled substances. To be clear, the Court is not prohibiting controlled substances from being

prescribed to a patient seen by Defendant or a federal health care program being billed for a patient seen by Defendant, so long as a different licensed physician prescribes the controlled substances and/or bills the federal health care program.

Finally, the Court believes that there are additional conditions – or clarifications of Defendant's conditions - of bond that the Court can and will impose to ensure that he complies with the terms of his bond conditions. Specifically, Defendant shall notify Pretrial Services in advance of any volunteer work he is going to perform, including identifying: (a) the hospital(s) at which he is going to volunteer, (b) his schedule, (c) his expected scope of duties, and (d) a contact person at each such hospital. Each such contact person must be authorized and competent to: (1) define the scope of Defendant's duties at that facility, (2) explain how Defendant will be supervised, and (3) to attest that Defendant is performing at that hospital in compliance with the conditions of Defendant's bond and this Order, including, without limitation, that Defendant is not receiving compensation of any kind, is not prescribing any controlled substances, and is not billing any federal health care program.

For all of these reasons, the Court concludes that, for as long as Defendant is and remains a licensed physician in the State of Michigan, Defendant's conditions of bond allow him to volunteer as a physician at one or more local hospital(s),

specifically as a pulmonologist, during the COVID-19 crisis, consistent with the terms, restrictions, and requirements of this Order.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Clarify Bond Conditions [ECF No. 470] is **GRANTED**.

**IT IS FURTHER ORDERED** that, for as long as Defendant is and remains a licensed physician in the State of Michigan, Defendant may volunteer only as a pulmonologist and only at one or more local hospitals during the COVID-19 crisis, and Defendant shall not accept, directly or indirectly, any form of compensation for any services he provides.

**IT IS FURTHER ORDERED** that Defendant shall not bill any federal health care program or prescribe any controlled substances.

**IT IS FURTHER ORDERED** that Defendant shall notify Pretrial Services in advance of any volunteer work he is going to perform, including identifying: (a) the hospital(s) at which he is going to volunteer, (b) his schedule, (c) his expected scope of duties, and (d) a contact person at each such hospital.

**IT IS FURTHER ORDERED** that each such contact person must be authorized and competent to: (1) define the scope of Defendant's duties at that facility,

(2) explain how Defendant will be supervised, and (3) to attest that Defendant is performing at that hospital in compliance with the conditions of Defendant's bond and this Order, including, without limitation, that Defendant is not receiving compensation of any kind, is not prescribing any controlled substances, and is not billing any federal health care program.

**IT IS FURTHER ORDERED** that Defendant shall immediately notify Pretrial Services of any change to information Defendant has provided to Pretrial Services with respect to any volunteer position he undertakes.

IT IS ORDERED.

s/Denise Page Hood

DENISE PAGE HOOD

Dated: April 7, 2020                    UNITED STATES DISTRICT JUDGE

-8-

# EXHIBIT B

Case 2:25-cr-20030-JTF-tmp Document 24-1 Filed 03/07/25 Page 20 of 25 PageID 147



# Acting United States Attorney Fondren Announces Federal Indictment Against Gynecologist for Sexually Abusing Patients, Adulterating Medical Devices for Reuse on Patients, and Healthcare Fraud

Friday, February 28, 2025

**For Immediate Release**

U.S. Attorney's Office, Western District of Tennessee

Comments and quotations contained in the February 28, 2025 version of this press release have been retracted.

**Memphis, TN** – Reagan Fondren, Acting United States Attorney for the Western District of Tennessee, announced today that **Sanjeev Kumar, 44,** was arrested this morning and charged with enticing and inducing four victims to travel interstate to engage in illegal sexual activity, adulteration of medical devices, misbranding of medical devices, and healthcare fraud.

The indictment unsealed today alleges that from at least in or about September 2019 and up to and including at least in or about June 2024, Kumar enticed and induced four victims to travel interstate to his medical offices in Memphis, Tennessee, at least in part for the purpose of

subjecting them to a sexual activity for which he could be charged with a criminal offense in violation of Tennessee Code Annotated Section 39-13-503.

According to the Indictment, between 2019 and 2024, Kumar sexually abused women by conducting medically unnecessary gynecologic procedures with medical devices that he held under insanitary conditions and reused on patients when they were required to be disposed of or properly reprocessed. Kumar did not inform patients that he was reusing "single use" or improperly reprocessed devices before he inserted the devices into their vaginas. He also billed Medicare and Medicaid as if the procedures were medically necessary and as if he had used a new or properly reprocessed device for each procedure.

This case is being investigated by the United States HHS-OIG, the United States Food and Drug Administration Office of Criminal Investigations (FDA-OCI), the Federal Bureau of Investigation (FBI), and Tennessee Bureau of Investigation (TBI).

The charges and allegations contained in the indictment are merely accusations of criminal conduct, not evidence. The defendant is presumed innocent unless and until proven guilty beyond a reasonable doubt and convicted through due process of law. If convicted, the defendant's sentence will be determined by the Court after review of the factors unique to the case, including the defendant's prior criminal records (if any), the defendant's role in the offense, and the characteristics of the violation.

Acting U.S. Attorney Fondren thanked Assistant United States Attorneys Lynn Crum, Scott Smith, and Sarah Pazar Williams for prosecuting this case, as well as the law enforcement partners who investigated the case.

### 

*For more information, please contact the Media Relations Team at USATNW.Media@usdoj.gov. Follow the U.S. Attorney's Office on Facebook or on X at @WDTNNews for office news and updates.*

*Updated March 6, 2025*

**Component**

USAO - Tennessee, Western

# Related Content

PRESS RELEASE

## Memphis Woman Sentenced to Ten Years in Federal Prison for Identity Theft and Bank Fraud

**Memphis, TN** – Patricia Johnson, **47**, has been sentenced to a total of 120 months in federal prison for committing identity theft and bank fraud, as well as...

March 4, 2025

PRESS RELEASE

## Check Fraudster Sentenced to Federal Prison

**Memphis, TN** – Kenyata Wilson, **36**, of Memphis, has been sentenced to federal prison for leading a check fraud ring in Memphis from 2022 to 2023.  Reagan Fondren...

February 26, 2025

PRESS RELEASE

## Woman Pleads Guilty to Scheme to Defraud Elvis Presley's Family

**Memphis, TN** – A Missouri woman pleaded guilty today in the Western District of Tennessee for her role in a scheme to defraud Elvis Presley's family of millions of dollars and...

February 25, 2025

✉️ **Memphis**

167 North Main Street

Suite 800

Memphis, TN 38103

**Jackson**

109 South Highland Avenue

Suite 300

Jackson, TN 38301

Contact Webmaster

📞 **Memphis**

Phone: (901) 544-4231

Fax: (901) 544-4230

TTY: (901) 969-3054

**Jackson**

Phone: (731) 422-6220

Fax: (731) 422-6668

TTY: (731) 422-6550

# EXHIBIT C

