UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

PRITI BHARDWAJ, M.D.,

      Defendant.

_____/

Case No. 25-CR-20451

Hon. Mark A. Goldsmith

**GOVERNMENT'S RESPONSE TO COURT'S JULY 24, 2025, ORDER
[ECF NO. 23]**

On July 24, 2025, the Court held a hearing on Defendant's motion for modification of bond condition. (ECF No. 16.) Following colloquy with counsel, the Court ordered supplemental briefing in connection with Defendant's motion. Specifically, the Court ordered the parties to address whether the implementation of a monitoring system that would prescreen claims submitted by Defendant for suspected fraud is administratively feasible. The Court asked, for example, whether it is practical to perform a periodic review of a random sample of claims. The Court further inquired as to whether any court has implemented such a system and, if so, whether the court addressed arguments for and against such an implementation.

1

In preparing to respond to the Court's questions, the government conferred with Suzy Hartman, a Program Integrity Supervisor at CoventBridge, the Unified Program Integrity Contractor responsible for investigating suspected fraud, waste, and abuse involving the Medicare program in Michigan. (*See* Ex A., Hartman Decl. ¶ 1.) As to administrative feasibility, Ms. Hartman explained that the investigation of a "single Medicare claim"—let alone thousands—is "potentially time-intensive and costly" because Coventbridge would need to—among other things—(1) access to medical records underlying the claim, including from providers other than Defendant; (2) use investigators to interview Defendant, providers, and the Medicare beneficiary associated with the claim; (3) and research into Medicare policies and regulations by the clinician conducting the review. (Ex. A, Hartman Decl., ¶ 4.)

Relevant here, Defendant's Practice[1]—from January 1, 2025, through July 14, 2025—submitted a total of over 16,000 Medicare claims during that period. (*Id.* at ¶ 10.) This includes over 250,000 claim lines as a result of multiple services associated with the same claim. (*Id.*; *see also id.* ¶ 5.) Defendant was the "rendering physician" for approximately 11,000 of those claims, meaning that she was the physician who purportedly provided the claimed services. (*Id.*) Given this volume,

---

[1] "Practice" refers to Priti Bhardwaj, M.D., P.C. (*See* ECF No. 1, Indictment, PageID.6, at ¶ 16.)

2

ongoing monitoring as part of Defendant's pretrial release conditions is "costly and impractical." (*Id.* ¶ 10.)

As to the effectiveness of a monitoring system, Defendant may also cause the submission of Medicare claims that are ultimately submitted by other providers and for which she may not be identified in the claim—making it more difficult to identify suspected fraudulent claims. (*Id.* ¶ 5.) Assessing the legitimacy of those claims, Ms. Hartman explains, would require "cooperation and review of the rendering provider." (*Id.*) An example of such a claim would include—relevant to the Indictment—a provider's homebound certification of a patient and order that the patient receive home health services performed by a home health agency. (*Id.* ¶ 6.) In Ms. Hartman's experience, some providers who certify Medicare beneficiaries for home health services do not necessarily bill Medicare for the relevant certifications. This would add here "an extra layer of complexity to identifying home health-related claims that [Defendant] has caused, and may be fraudulent, but which CoventBridge would not necessarily know is associated with . . . [Defendant]." (*Id.*)[2]

---

[2] Additionally, for the Court's situational awareness, Defendant is subject to the Department of Health and Human Services Office of Inspector General-initiated Medicare payment suspension based on her indictment, and which is within the scope of Medicare's administrative function. (*Id.* at ¶ 9.) In other words, Defendant nor her Practice will be paid for any claim that is submitted. (*Id.*) The payment suspension, however, does not address claims that "may be caused by

3

Given these extensive concerns, it is no surprise that, in the course of her 20-year career in the field of Medicare program integrity, Ms. Hartman has not been tasked with a court-ordered monitoring of a health care fraud defendant's Medicare claims as a condition of pretrial release, nor is she personally aware that such an arrangement as having been previously ordered. (*Id.* ¶ 2.) The government has further inquired of other Health Care Fraud Trial Attorneys in other jurisdictions and the U.S. Attorney's Office in Detroit, Michigan. As of today's date, the government is unaware of another court implementing such an arrangement, except for one case in the Eastern District of New York in which the parties agreed to have all Medicare and Medicaid claims reviewed by an independent auditor paid for the defendant himself. (*U.S. v. Perry*, 2:22-cr-00180, ECF No. 14 (E.D.N.Y.)) (Based on a review of the *Perry* court's docket, the question of administrative feasibility or other logistics of the specific arrangement was not briefed by the parties, nor the did Court's order address the parameters and counters of the arrangement.) Instead—and importantly—courts in this District have *rejected* defendants' requests for third-party monitoring of claims. *See, e.g.*, *United States v. Mok*, No. 20-MJ-30163, 2020

---

Defendant but submitted by another provider," and in those cases, "Medicare and its contractors would not necessarily know that she was involved in the submission of the claim." (*Id.*)

WL 2528671, at *2 (E.D. Mich. May 18, 2020) (Drain, J.) (rejecting proposal for third-party monitor); *United States v. Judd*, No. 21-20600, 2021 U.S. Dist. LEXIS 222516, *3 (E.D. Mich. Nov. 18, 2021) (Parker, J.) (noting that defendant "ha[d] not shown that his proposed alternative—a third-party monitor of his billing—is feasible or workable"). Given the "significant volume of health care fraud" here, there is no reason to "deviate from the Sixth Circuit standard [of imposing the Medicare Condition]." *See Mok*, 2020 WL 2528671, at *2.

Finally, the government must clarify an issue with the Court. At the July 24, 2025, hearing, counsel for the government argued that Defendant could not seriously claim that her livelihood would be "crippled" by the Medicare Condition because, based on a review of bank records, Defendant's Practice received between 2019 and 2024 around $7 million from private insurance—not Medicare. The government, however, further investigated the issue following the hearing, and learned that the vast majority of these private insurance payments likely originate from Medicare Advantage plans that are administered by private payors. Thus, the government does not dispute the defense assertion that Defendant's Practice consists overwhelmingly of Medicare beneficiaries. Regardless of the amounts received from private insurance, however, Defendant is not prohibited from billing private insurance moving forward, nor is she prohibited from operating on a cash-basis.

5

Accordingly, given this District's precedent and the concerns addressed here, and for the reasons explained in its response [ECF No. 22.], the government respectfully requests that the Court deny Defendant's motion and not order the implementation of a monitoring system.

Dated: July 31, 2025

                         Respectfully submitted,

                         LORDINA LARYEA
                         Acting Chief, Fraud Section

                         JACOB FOSTER
                         Acting Chief, Health Care Fraud Unit

                         JEROME F. GORGON JR.
                         United States Attorney

                         *s/ Syed Ahmadul Huda*
                         RYAN ELSEY
                         SYED AHMADUL HUDA
                         Trial Attorneys
                         United States Department of Justice
                         Criminal Division, Fraud Section
                         211 W. Fort Street
                         Detroit, MI 48226
                         (202) 591-0133
                         ryan.elsey@usdoj.gov
                         syed.ahmadul.huda@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to any counsel for Defendant.

> *s/Syed Ahmadul Huda*
> Syed Ahmadul Huda
> U.S. Department of Justice
> Criminal Division, Fraud Section
> 211 W. Fort Street, Suite 2000
> Detroit, MI 48226
> Phone: (202) 591-0133
> Email: syed.ahmadul.huda@usdoj.gov