# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

PRITI BHARDWAJ, M.D.,

    Defendant.
_____/

Case No. 25-CR-20451

Hon. Mark A. Goldsmith

## **DECLARATION OF SUZY HARTMAN**

I, Suzy Hartman, hereby affirm the following:

    1.    I am currently employed as a Program Integrity Supervisor by CoventBridge, the Unified Program Integrity Contractor responsible for investigating suspected fraud, waste, and abuse involving the Medicare program in Michigan.

    2.    During my 20 years of experience in the field of Medicare program integrity, I have not previously been tasked with Court-ordered monitoring of a health care fraud defendant's Medicare claims as a condition of pretrial release. Nor I am personally aware that such an arrangement has been previously ordered.

1

3. There are practical limitations to CoventBridge monitoring Medicare claims for potential fraud, waste, and abuse as a Court-ordered condition of a health care fraud defendant's pretrial release.

4. To investigate even a single Medicare claim for fraud, waste, and abuse, CoventBridge would need access to all medical records underlying the claim, potentially including from providers other than the defendant. CoventBridge may need to utilize investigators to interview the defendant and other providers as well as the Medicare beneficiary associated with that single claim. Ultimate review of the claim might require research into Medicare policies and regulations by the clinician conducting the review, and consultation with relevant subject matter experts employed by CoventBridge. Thus, investigating even a single claim is potentially time-intensive and costly.

5. Yet, the defendant may submit dozens or even hundreds of Medicare claims in just one day. She may also cause the submission of Medicare claims ultimately submitted by other providers, such as by referring patients for services performed by other providers. Assessing the legitimacy of those claims would require the cooperation and review of the providers that actually rendered the services.

6. An example of this would be when a provider certifies a patient as homebound and orders home health care services performed by a home health care agency. In my experience, some providers who certify Medicare beneficiaries for home health services do not necessarily bill Medicare for the relevant certifications. This adds an extra layer of complexity to identifying home health-related claims that a physician has caused, and may be fraudulent, but which CoventBridge would not necessarily know is associated with the provider.

7. The potential volume of claims, along with the extensive medical review needed to examine claims, makes it impractical for CoventBridge or other UPICs to monitor Medicare claims in real time. This is why Medicare is considered a trust-based system, which relies on providers to submit accurate claims.

8. When a provider has breached that trust, including when there are credible fraud allegations in an indictment, it is my understanding that one remedy that the Medicare program has is to initiate a payment suspension of the provider. Such payment suspensions mean that if a provider submits a claim, the Medicare program will not pay it until the suspension is lifted.

9. The defendant in this case, Dr. Priti Bhardwaj, and her practice, Priti Bhardwaj MD PC, are presently subject to a Department of Health and Human Services Office of Inspector General-initiated Medicare payment suspension

predicated on her indictment, and within the scope of Medicare's administrative function. This means that if Dr. Bhardwaj or her practice submit claims directly to Medicare, the Medicare program will not pay those claims. However, for claims that may be caused by Dr. Bhardwaj but submitted by another provider, Medicare and its contractors would not necessarily know that she was involved in the submission of the claim.

10. Prior to the payment suspension, according to Medicare claims data that is available to me in my role as a Program Integrity Supervisor, Priti Bhardwaj MD PC submitted a high volume of Medicare claims. For instance, from January 1, 2025, through July 14, 2025, when the most recent data set was pulled, Priti Bhardwaj MD PC submitted a total of over 16,000 Medicare claims during that period. This includes over 250,000 claim lines, as a result of multiple services associated with the same claim. Dr. Bhardwaj was the "rendering physician" for approximately 11,000 of those claims, meaning that she was the physician who purportedly provided the claimed services. This volume of claims activity would make ongoing monitoring as part of Dr. Bhardwaj's pretrial release conditions costly and impractical.

I verify, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct. Executed on the 30th day of July, 2025, in Circleville, Ohio.

*Suzy Hartman*
_____
Suzy Hartman